STATE OF NORTH CAROLINA v. NEIL DOUGLAS BEACH

No. 71

(Filed 9 May 1973)

**1. Criminal Law § 9; Assault and Battery § 14— aiders and abettors — sufficiency of evidence**

In a prosecution charging defendant with aiding and abetting in assault with a firearm with intent to kill and aiding and abetting in the discharge of a firearm into an occupied vehicle, evidence was sufficient to withstand motion for nonsuit where it tended to show that defendant was present when the crime was committed, operated flashing lights on his automobile and blinked his headlights from bright to dim numerous times while driving close behind the victim's automobile, thus causing that automobile to stop on the side of the road, pulled alongside the victim's automobile so that the gunman's window was flush with the driver's seat, moved slowly along after the first shot was fired while the gunman fired five additional shots into the victim's automobile, left the scene of the crime, attempted to escape recognition, pursued the victim's automobile at high rates of speed, denied to police officers that he had been at the scene of the crime and later admitted being present.

**2. Criminal Law § 9— aider and abettor — acquittal of principal**

It is not necessary that the person who actually perpetrated a crime be tried and convicted before the one who aided and abetted in the crime can be tried and convicted, but there must be proof that the offense has in fact been committed.

**3. Criminal Law § 9; Indictment and Warrant § 9— aider and abettor — acquittal of principal — sufficiency of indictment against defendant**

Where indictments charged that an unknown person discharged a firearm into an occupied vehicle and committed an assault with a firearm with intent to kill and that defendant was present, aiding and abetting in the deed, acquittal of one Johnny Smith as the actual perpetrator did not constitute a sufficient basis for dismissal of the charges against defendant.

**4. Criminal Law § 172— failure to submit lesser offense — acquittal — error cured**

Jury verdict of not guilty of aiding and abetting in assault with a firearm with intent to kill was tantamount to a verdict of not guilty of all lesser included offenses; therefore, the jury verdict rendered nonprejudicial the failure of the trial judge to submit the lesser included offense of aiding and abetting in an assault with a deadly weapon.

**5. Criminal Law § 9; Indictment and Warrant § 9— defendant as aider and abettor — sufficiency of indictments**

An indictment must charge every essential element of the crime, but it need not set forth the specific facts or means by which an accused aided and abetted in the commission of a crime; therefore,

the trial court in a case charging defendant with aiding and abetting in an assault with a firearm with intent to kill and with aiding and abetting in the discharge of a firearm into an occupied vehicle properly refused to quash the indictments against defendant, particularly since the allegations of the indictments stated facts showing that defendant was present as the driver of the vehicle from which the shots were fired.

**6. Criminal Law §§ 112, 119— requested instruction — incorrect statement of law — refusal to instruct proper**

Defendant's requested instruction that "Circumstantial evidence which raises mere suspicion or conjecture of guilt is insufficient for conviction" was not a correct statement of the law as to the intensity of proof required when the State relies upon circumstantial evidence, and the trial court therefore properly refused to give the instruction.

**7. Criminal Law § 119— requested instructions given in substance — no error**

There was no prejudicial error in the trial court's refusal to give instructions as to aiders and abettors in the exact words of defendant's tendered request where the charge actually given was substantially in accord with defendant's request.

**8. Constitutional Law § 34; Criminal Law § 26— two charges based on one offense — acquittal on one charge — no double jeopardy**

In a prosecution charging defendant with aiding and abetting in an assault with a firearm with intent to kill and aiding and abetting in the discharge of a firearm into an occupied vehicle where defendant was acquitted of the assault charge, he was neither convicted nor punished twice for the same offense and did not suffer infringement of his constitutional guaranty against double jeopardy by the imposition of multiple punishment; even if he was twice tried for the same offense at the same time.

**9. Criminal Law § 142— suspended sentence upon conditions — consent of defendant — effect of appeal on judgment**

Where the judgment of the trial court contained a recital that the actual sentence was suspended with defendant's consent upon the condition that he surrender his license to practice law to the N. C. State Bar and there is no indication in the record that defendant excepted to the judgment or withdrew his consent, the question of whether defendant's appeal stayed the order of disbarment by the trial court is not presented on appeal.

APPEAL by defendant from *Fountain, J.,* 18 September 1972 Session of BURKE Superior Court, transferred for initial appellate review by the Supreme Court by Order dated 26 March 1973 pursuant to G.S. 7A-31 (b) (4).

Indictment No. 71 Cr 7002 charged:

"THE JURORS FOR THE STATE UPON THEIR OATH PRE-SENT, That Neil Douglas Beach late of the County of Burke

State v. Beach

on the 24th day of August, 1971, with force and arms, at and in the county aforesaid, did unlawfully, wilfully, and feloniously aid and abet an unknown party who unlawfully, wilfully and feloniously discharged a pistol, a firearm, into an automobile located on Highway No. 181 North of Morganton, North Carolina between Morganton and Oak Hill School, Burke County, North Carolina, while Robert H. Deaton, his wife, Revonda Gail Deaton, and their children, Bobby Lynn Deaton, age nine (9) years, and James Robert Deaton, age eight (8) years, were in actual occupation of the said automobile. Neil Douglas Beach was the driver of the automobile from the rear seat of which said shots were fired. After the shooting said automobile was driven away at a high rate of speed by the defendant against the form of the statute in such case made and provided and against the peace and dignity of the State.

s/ Donald E. Greene

Solicitor"

Indictment No. 71 CrD 6918 charged:

"The Jurors for the State Upon Their Oath Present, That Neil Douglas Beach, late of the County of Burke on the 24th day of August, 1971, with force and arms, at and in the county aforesaid, did unlawfully, wilfully and feloniously aid and abet an unknown party who unlawfully, wilfully and feloniously assaulted Robert H. Deaton and his wife, Revonda Gail Deaton, and their children, Bobby Lynn Deaton, age nine (9) years, and James Robert Deaton, age eight (8) years, with a certain deadly weapon, to wit: a Pistol, with the felonious intent to kill and murder the said Robert H. Deaton, his wife, Revonda Gail Deaton, and their children, Bobby Lynn Deaton, age nine (9) years, and James Robert Deaton, age eight (8) years, in that said unknown party fired said pistol six (6) times into an automobile which Robert H. Deaton, his wife, Revonda Gail Deaton, and their children, Bobby Lynn Deaton, age nine (9) years, and James Robert Deaton, age eight (8) years, were occupying, one shot going through the car and passing near the head of Robert H. Deaton, and the other five (5) shots striking said automobile which Robert H. Deaton, his wife, and children were occupying. Neil Douglas Beach was the driver of the automobile from

the rear seat of which said shots were fired. After the shots were fired, said automobile was driven away at a high rate of speed by the defendant, against the form of the statute in such case made and provided and against the peace and dignity of the State.

s/ Donald E. Greene

Solicitor"

Prior to pleading defendant moved to dismiss on the ground that Johnny Smith was tried and acquitted as the principal in both charges of which defendant allegedly aided and abetted. In support of his motion, defendant handed up the transcript in the Johnny Smith case. He also introduced the record proper in the cases charging Johnny Smith with assault with a firearm with intent to kill and discharging a firearm into a vehicle. The trial judge denied defendant's motion to dismiss. The indictments were consolidated for trial and defendant entered pleas of not guilty.

The State offered evidence which tended to show that on the night of 24 August 1971, or the early morning of August 25, 1971, the Robert H. Deaton family was going toward Morganton on Highway 181 in their 1969 Chevelle automobile. Mr. Deaton was driving, Mrs. Deaton was in the front passenger seat, and their young sons Robert and James were asleep in the back seat. After the Deatons had passed two vehicles and a driveway leading to the home of a man named Biggerstaff, the vehicle driven by defendant approached from the rear blinking its lights from high to low and operating its flashing lights. Mr. Deaton thereupon pulled his automobile to the shoulder of the road, and defendant drove his Oldsmobile automobile beside the Deaton car so that the right rear window of defendant's car was opposite the driver's window of the Deaton automobile. A woman was in the front seat beside defendant, and a man was sitting in the front seat next to the door. Two men were in the back seat. When defendant's automobile came to a stop, a man sitting in the right rear seat of defendant's automobile inquired, "Are you having any trouble, buddy?" Mr. Deaton answered "No." The man making the inquiry then extended his arm out the window and shot toward Mr. Deaton. Deaton fell back in his wife's lap. He was not hit by a bullet but received powder burns about his face. Defendant then slowly drove forward, and five other shots were rapidly fired.

Four of these shots hit the front part of the Deaton vehicle, and one shot hit the radio aerial. Defendant's vehicle then moved off at a normal rate of speed, and Mr. Deaton followed. The license number on the Oldsmobile was blurred with mud, and as Deaton came closer to get a better view of the license plate defendant suddenly applied brakes, forcing Deaton to swerve his automobile and pass. The Deatons were able to obtain the license number of the Oldsmobile automobile. After passing the Oldsmobile Mr. Deaton accelerated his automobile to speeds of approximately 100 mph with the Oldsmobile following closely behind. The Oldsmobile began to slow down and disappeared from the Deatons' view near the road leading to Lenoir, North Carolina.

The Deatons proceeded to the police station at Morganton, reported the incident, and furnished the police with the license number which they had taken from the Oldsmobile automobile. The police apprehended defendant in Lenoir, North Carolina, and he agreed to return to Burke County.

Mr. and Mrs. Deaton had not previously known any of the occupants of the Oldsmobile automobile but identified defendant as the operator of the Oldsmobile and Mary Max Berry as the woman who was sitting in the front seat. They were unable to identify the remaining occupants of the automobile. Mrs. Deaton later saw Johnny Smith and stated positively that he was not the man who shot into their automobile.

Defendant offered evidence which tended to show that he was a practicing attorney with offices in Lenoir, North Carolina, and that on the night of 24 August 1971 he went to Burke County to see a client by the name of Biggerstaff. At the time he encountered the Deatons he was accompanied by Mrs. Mary Max Berry, who was riding in the front seat, Leroy Nelson, who was sitting in the left rear seat and Johnny Smith, who was occupying the right rear seat. As he drove down Highway 181 toward Morganton, the Deatons' automobile came up behind him with its lights blinking, passed him, and after slowing down came to a stop on the shoulder of the road. Defendant Beach testified:

"When he pulled off the road, I thought he was in trouble. But he pulled all the way off the highway onto the shoulder of the road there. I pulled up beside of him and just slowly—just well, I think Mrs. Deaton was yes—

I took my foot off the gas and the car just idled up beside, when I got up even—about well, just about, just like they said, about my back window was even with Mrs. Deaton's front window. Johnny Smith rolled the window down, and said, "What's the trouble, and I didn't hear anything said, but I heard a shot, and then just—everything just happened fast—six shots or five shots and just bang, bang, bang, bang, and the first shot—No, sir, I didn't see who fired those shots, I didn't see a gun until later. I was on down the road when I saw a gun."

Defendant further stated that he drove away after the shooting occurred because he was frightened, and that he carried Johnny Smith and Leroy Nelson to Smith's automobile. He admitted that he had first stated to police officers that he had not been in Burke County on the night of the shooting.

Defendant offered witnesses who gave testimony tending to corroborate the defendant. He also offered numerous witnesses who testified as to his good reputation and character.

The jury returned a verdict finding defendant not guilty of aiding and abetting in assault with a firearm with intent to kill. The jury returned a verdict finding defendant guilty of aiding and abetting in the discharge of a firearm into an occupied vehicle. Defendant appealed.

*Simpson, Martin and Baker, by Dan R. Simpson and Gene Baker for defendant appellant.*

*Attorney General Morgan; Assistant Attorney General R. S. Weathers for the State.*

BRANCH, Justice.

[1] Defendant assigns as error the failure of the trial judge to grant his motions as of nonsuit.

The following principles of law control decision of this assignment of error:

One who advises, counsels, procures, encourages or assists another in the commission of a crime is an aider and abettor. *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793; *State v. Johnson,* 220 N.C. 773, 18 S.E. 2d 358; *State v. Lambert,* 196 N.C. 524, 146 S.E. 139; *State v. Hart,* 186 N.C. 582, 120 S.E. 345.

State v. Beach

"A person aids and abets when he has 'that kind of connection with the commission of a crime which, at common law, rendered the person guilty as a principal in the second degree. It consisted in being present at the time and place, and in doing some act to render aid to the actual perpetrator of the crime, though without taking a direct share in its commission.' "

*State v. Davenport,* 156 N.C. 596, 72 S.E. 7; *State v. Epps,* 213 N.C. 709, 197 S.E. 580. See also *State v. Oliver,* 268 N.C. 280, 150 S.E. 2d 445; *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169; *State v. Gaines,* 260 N.C. 228, 132 S.E. 2d 485.

This Court in the case of *State v. Price,* 280 N.C. 154, 184 S.E. 2d 866, has defined an aider and abettor, or a principal in the second degree, as follows:

" . . . One who procures or commands another to commit a felony, accompanies the actual perpetrator to the vicinity of the offense and, with the knowledge of the actual perpetrator, remains in that vicinity for the purpose of aiding and abetting in the offense and sufficiently close to the scene of the offense to render aid in its commission, if needed, or to provide a means by which the actual perpetrator may get away from the scene upon the completion of the offense, is a principal in the second degree and equally liable with the actual perpetrator. . . . "

In *State v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589, the definition is stated thusly:

" ' A person aids when, being present at the time and place, he does some act to render aid to the actual perpetrator of the crime though he takes no direct share in its commission; and an abettor is one who gives aid and comfort, or either commands, advises, instigates or encourages another to commit a crime.' *State v. Holland,* 234 N.C. 354, 358, 67 S.E. 2d 272; *State v. Johnson,* 220 N.C. 773, 776, 18 S.E. 2d 358. ' . . . Mere presence, even with the intention of assisting in the commission of a crime cannot be said to have incited, encouraged or aided the perpetration thereof, unless the intention to assist was in some way communicated to him (the perpetrator) . . . . ' *State v. Hoffman,* 199 N.C. 328, 333, 154 S.E. 314. However, there is an exception. ' . . . when the bystander is a friend of

the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement, and in contemplation of law this was aiding and abetting.' *State v. Holland, supra.*"

Defendant relies upon the cases of *State v. Ham,* 238 N.C. 94, 76 S.E. 2d 346, *State v. Hargett, supra,* and *State v. Gaines, supra,* to support his contention that the trial judge should have allowed his motions as of nonsuit. These cases are factually distinguishable from this case in that the State in each was only able to show that defendant was present at the scene of the crime. There was no evidence that the defendants in any of these cases rendered aid to the perpetrator of the deed, or that any one of the defendants gave encouragement or made it known that he was present to lend aid to the perpetrator of the deed if it were needed.

In instant case, the State offered evidence tending to show that defendant (1) was present when the crime was committed, (2) operated the flashing lights on his automobile and blinked his headlights from bright to dim numerous times while driving close behind the Deaton automobile, thus causing that automobile to stop on the side of the road, (3) pulled alongside the Deaton automobile so that the gunman's window was flush with the driver's seat, (4) moved slowly along after the first shot was fired while the gunman fired five additional shots into the Deaton motor vehicle, (5) left the scene of the crime, (6) attempted to escape recognition, (7) pursued the Deaton automobile at high rates of speed, (8) denied to police officers that he had been in Burke County and later admitted being present.

We conclude that when taken in the light most favorable to the State there was sufficient evidence to allow the jury to find that defendant was present at the time the crime was committed, and that he rendered aid to the actual perpetrator of the crime.

We hold that there was sufficient evidence to repel defendant's motion as of nonsuit.

Defendant next contends that the trial court erred in placing him on trial as an aider and abettor to discharging a firearm into an occupied vehicle and as an aider and abettor

to an assault with a firearm with intent to kill, because the State had previously tried Johnny Smith as the actual perpetrator of these crimes, and the said Johnny Smith was found to be not guilty of either charge.

[2]  It is not necessary that the person who actually perpetrated the deed be tried and convicted before the one who aided and abetted in the crime can be tried and convicted. *State v. Jarrell,* 141 N.C. 722, 53 S.E. 127. Indeed, this Court has held that where one principal has been acquitted at a former trial it was no bar to the trial of the others who were indicted as principals. *State v. Whitt,* 113 N.C. 716, 18 S.E. 715. See Annot., 24 A.L.R. 603; 21 Am. Jur. 2d Criminal Law § 101. Obviously there must be proof that the offense has in fact been committed before one may be convicted of aiding and abetting in its commission. *Cf. State v. Gainey,* 273 N.C. 620, 160 S.E. 2d 685; *State v. Spruill,* 214 N.C. 123, 198 S.E. 611.

We find the following statement in 21 Am. Jur. 2d Criminal Law § 128, n. 15, to wit: "The fact that one mistakenly supposed to have committed a crime was tried therefor and acquitted does not affect the guilt of one proven to have been present aiding and abetting, so long as it is established that the crime was committed by someone."

This Court has recognized that an indictment may properly allege unknown conspirators in charging a criminal conspiracy. *State v. Gallimore,* 272 N.C. 528, 158 S.E. 2d 505; *State v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686; *State v. Abernethy,* 220 N.C. 226, 17 S.E. 2d 25; *State v. Lewis,* 142 N.C. 626, 55 S.E. 600. It rationally follows that an indictment is valid which alleges the existence of an unknown co-principal in charging a crime.

[3]  Here the bills of indictment do not allege that Johnny Smith was the person who actually perpetrated the offenses. The indictments charged that a crime was committed by an unknown person and that defendant was present, aiding and abetting in the deed. Thus the acquittal of Johnny Smith was not a sufficient basis for dismissal of the charges.

[4]  Defendant assigns as error the failure of the trial judge to submit to the jury the misdemeanor charge of assault with a deadly weapon.

Assault with a deadly weapon is a lesser included offense of assault with a firearm with intent to kill.

When there is evidence of a lesser included offense of the crime, the court must charge upon the milder offense even when there is no specific prayer for such charge. *State v. Riera,* 276 N.C. 361, 172 S.E. 2d 535; *State v. Wagoner,* 249 N.C. 637, 107 S.E. 2d 83.

Here, the jury returned a verdict of not guilty of the greater offense which was tantamount to a verdict of not guilty of all lesser included offenses. 5 Am. Jur. 2d Appeal and Error § 792. Therefore, the jury verdict rendered nonprejudicial the failure of the trial judge to submit the lesser included offense of aiding and abetting in an assault with a deadly weapon.

[5] Defendant contends his motions to quash the indictments were erroneously denied because each failed to allege how defendant aided and abetted.

The requirements for a valid indictment are stated in *State v. Greer,* 238 N.C. 325, 77 S.E. 2d 917, as follows:

" . . . (1) such certainty in the statement of the accusation as will identify the offense with which the accused is sought to be charged; (2) to protect the accused from being twice put in jeopardy for the same offense; (3) to enable the accused to prepare for trial, and (4) to enable the court, on conviction or plea of *nolo contendere* or guilty to pronounce sentence according to the rights of the case. *S. v. Cole,* 202 N.C. 592, 163 S.E. 594; *S. v. Gregory,* 223 N.C. 415, 27 S.E. 2d 140; *S. v. Morgan,* 226 N.C. 414, 38 S.E. 2d 166; *S. v. Miller,* 231 N.C. 419, 57 S.E. 2d 392; *S. v. Biggs,* 234 N.C. 259, 66 S.E. 2d 883."

G.S. 15-153 provides:

"Every criminal proceeding by warrant, indictment, information, or impeachment is sufficient in form for all intents and purposes if it express the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment."

This statute has been liberally construed by our Court, *State v. Greer, supra;* nevertheless, the statute does not dispense with the requirement that the essential elements of the offense must be charged. *State v. McBane,* 276 N.C. 60, 170 S.E. 2d 913.

Defendant relies on this passage from *State v. Greer, supra:*

"The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words. *S. v. Gregory, supra; S. v. Miller, supra; S. v. Randolph,* 228 N.C. 228, 45 S.E. 2d 132. This rule does not apply where the words of the statute do not, without uncertainty or ambiguity, set forth all the essential elements necessary to constitute the offense sought to be charged in the indictment, so as to inform the defendant of the exact charge of which he is accused to enable him to prepare his defense, to plead his conviction or acquittal as a bar to further prosecution for the same offense, and upon conviction to enable the court to pronounce sentence. In such a situation the statutory words must be supplemented in the indictment by other allegations which explicitly and accurately set forth every essential element of the offense with such exactitude as to leave no doubt in the minds of the accused and the court as to the specific offense intended to be charged. . . . "

It should be noted that defendant omitted the final sentence of the paragraph, which reads as follows: "However, it is neither necessary to state particulars of the crime in the meticulous manner prescribed by common law, nor to allege matters in the nature of evidence."

An indictment for a statutory offense is sufficient when it charges the offense in the language of the statute. *State v. Penley,* 277 N.C. 704, 178 S.E. 2d 490; *State v. Hord,* 264 N.C. 149, 141 S.E. 2d 241. Moreover, it is generally recognized that an indictment need not set forth the specific facts or means by which an accused aided and abetted in the commission of a crime. Annot., 116 A.L.R. 1104. Even so, the allegations of the indictments here challenged stated facts showing that defendant was present as the driver of the vehicle from which the shots were fired. Had defendant desired further information, he could have moved for a bill of particulars.

[6] Defendant also assigns as error the trial judge's denial of requested instructions on circumstantial evidence.

In apt time defendant requested this instruction: "Circumstantial evidence which raises mere suspicion or conjecture of guilt is insufficient for conviction."

A general and correct charge as to the intensity or quantum of proof when the State relies wholly or partly on circumstantial evidence is adequate unless the defendant tenders request for a charge on the intensity of proof required for such evidence. *State v. Stevens,* 244 N.C. 40, 92 S.E. 2d 409; *State v. Shoup,* 226 N.C. 69, 36 S.E. 2d 697. When such request is aptly tendered, the trial judge should charge that circumstantial evidence must point unerringly to defendant's guilt and exclude every other reasonable hypothesis. *State v. Lowther,* 265 N.C. 315, 144 S.E. 2d 64; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431; *State v. Warren,* 228 N.C. 22, 44 S.E. 2d 207.

In instant case the requested instruction was not a correct statement of the law as to the intensity of proof required when the State relies upon circumstantial evidence, and the court therefore properly refused to give the instruction. 3 Strong's N. C. Index 2d Criminal Law § 119. The court is under no duty to modify or qualify the requested instruction so as to remedy defects therein. 7 Strong's N. C. Index 2d Trial § 38.

We believe the court's charge placing the burden upon the State to prove defendant's guilt beyond a reasonable doubt was sufficient. *State v. Shoup, supra; State v. Shook,* 224 N.C. 728, 32 S.E. 2d 329.

[7] Defendant also avers that the trial court erred in refusing to give the following requested instruction:

"TO RENDER ONE WHO DOES NOT ACTUALLY PARTICIPATE IN THE COMMISSION OF A CRIME GUILTY OF THE OFFENSE COMMITTED, THERE MUST BE SOME EVIDENCE TENDING TO SHOW THAT HE, BY WORD OR DEED, GAVE ACTIVE ENCOURAGEMENT TO THE PERPETRATOR OF THE CRIME OR BY HIS CONDUCT MADE IT KNOWN TO SUCH PERPETRATOR THAT HE WAS STANDING BY TO LEND ASSISTANCE WHEN AND IF IT SHOULD BECOME NECESSARY."

Judge Fountain, in part, charged:

" . . . it is settled law that all who are present at the place of a crime and are either aiding and abetting, assisting or advising in its commission, or are present for such

purpose to the knowledge of the actual perpetrator are principals and are equally guilty. A person aids when being present at the time and place, he does some act to render aid to the actual perpetrator of the crime, though he takes no direct share in its commission.

An abettor is one who gives aid and comfort or either commands, advises, instigates, or encourages another to commit a crime.

Further, the mere presence of a person at the scene of a crime at the time of its commission does not make him a principal in the second degree; that is, does not make him an aider and abettor, . . . While mere presence cannot constitute aiding and abetting, a bystander does become an aider and abettor by his presence at the time and place of a crime where he is present to the knowledge of the actual perpetrator of the crime for the purpose of assisting, if necessary, in the commission of the crime, and his presence and purpose do in fact encourage the actual perpetrator to commit the crime."

The court's charge was substantially in accord with defendant's request. The law does not require that the charge be given exactly in the words of the tendered request or instructions. *State v. Howard*, 274 N.C. 186, 162 S.E. 2d 495; *State v. Bailey*, 254 N.C. 380, 119 S.E. 2d 165.

There was no prejudicial error in the court's refusal to give the instructions as tendered by defendant.

[8]   Defendant's assignment of error No. 9 is as follows:

"WAS THE DEFENDANT PLACED IN DOUBLE JEOPARDY WHEN THE COURT ORDERED THAT HE BE TRIED FOR TWO SEPARATE CRIMES ARISING OUT OF ONE SINGLE INDEPENDENT CRIMINAL OFFENSE, THUS SUBJECTING HIM TO MULTIPLE PUNISHMENT FOR THE SAME OFFENSE?"

This Court stated in *State v. Summrell*, 282 N.C. 157, 192 S.E. 2d 569, that "The constitutional guarantee against double jeopardy protects a defendant from multiple punishment for the same offense, . . . " In finding that the defendant has been twice convicted and sentenced for the same criminal offense, we said that "The fact that concurrent, identical sentences were imposed in each case makes this duplication of conviction and

punishment no less a violation of defendant's constitutional right not to be put in jeopardy twice for the same offense."

The difference between instant case and *Summrell,* assuming that this defendant was twice tried for the same offense at the same time, is that defendant was acquitted of one of the offenses—aiding and abetting assault with a firearm with intent to kill. Therefore, he was neither convicted nor punished twice for the same offense and did not suffer infringement of his constitutional guaranty against double jeopardy by the imposition of multiple punishment.

"If a person is convicted simultaneously of armed robbery and of the lesser included offense of assault with a deadly weapon, and both offenses arise out of the same conduct, as in *State v. Parker,* 262 N.C. 679, 138 S.E. 2d 496 (1964), and *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970), and separate judgments are pronounced, the judgment on the separate verdict of guilty of assault with a deadly weapon must be arrested." *State v. Richardson,* 279 N.C. 621, 185 S.E. 2d 102 (1971). Even if defendant had been tried for an offense and a lesser included offense thereof, the remedy, as suggested in *Richardson,* would be of no avail in that there is no separate verdict of guilty to be arrested.

We find no prejudicial error in this assignment of error.

[9] Finally, defendant assigns as error the action of the trial judge in disbarring him after his conviction of a felony and after he had given notice of appeal.

Article 4 of Chapter 84 of the General Statutes provides for the creation of the North Carolina State Bar as an agency of the State and in part provides for the discipline and disbarment of its members. It does not, however, purport to fetter the inherent power of the courts to disbar attorneys. G.S. 84-36; *In re Burton,* 257 N.C. 534, 126 S.E. 2d 581.

When an attorney is convicted of a felony, the court conducting the criminal trial, in the exercise of its inherent powers, may summarily and without further proceedings order his name stricken from the rolls of attorneys and order his license surrendered to the North Carolina State Bar, Inc. Such order is entered as protection to the public against an unworthy practitioner. *In re Burton, supra; In re Brittain,* 214 N.C. 95, 197

S.E. 705; *State v. Spivey,* 213 N.C. 45, 195 S.E. 1; *In the matter of Ebbs,* 150 N.C. 44, 63 S.E. 190.

The narrow question of whether defendant's appeal stays the order of disbarment is not posed by the facts of this case since defendant consented to the surrender of his license as one of the conditions of the suspension of the active sentence imposed.

The judgment provides:

"It is ADJUDGED that the defendant be imprisoned for the term not less than 18 nor more than 24 months in the common jail of Burke County to be assigned to work under the supervision of the State Department of Correction;

The execution of this sentence is suspended, however, for three years upon compliance with the following conditions, *to which the defendant gave assent:* that he be placed on probation for three years under the usual statutory terms and conditions, and upon these special conditions of probation: (1) that he pay the costs in this action; (2) that he pay into the office of the clerk the sum of $1184.60 for the use and benefit of Robert H. Deaton; (3) that he pay into the office of the clerk the sum of $650.00 for the use and benefit of Mrs. Robert H. Deaton; (4) that he surrender his law license to the North Carolina State Bar, Inc., and not engage in the practice of law until and unless the North Carolina Bar, Inc. determines that his law license be reissued.

This, the 22nd day of September, 1972.

s/ GEORGE M. FOUNTAIN

Judge Presiding

Attorneys for Defendant:   Dan R. Simpson,
C. E. Baker

Attorneys for the State:   Donald E. Greene,
Joe K. Byrd, Robert
B. Byrd" (Emphasis ours)

In *State v. Cole,* 241 N.C. 576, 86 S.E. 2d 203, it is stated:

"True, courts having jurisdiction may pronounce judgment as by law provided; and then, *with the defendant's*

*consent,* express or implied, suspend execution thereof upon prescribed conditions. Long recognized as an inherent power of the court, such authority is now recognized expressly by statute. *S. v. Miller,* 225 N.C. 213, 34 S.E. 2d 143, and cases cited; G.S. 15-197."

The case of *State v. Warren,* 252 N.C. 690, 114 S.E. 2d 660, contains the following pertinent statement:

"Appellant finally contends that he did not consent to the suspension of the prison sentence, that his exception to the judgment and notice of appeal therefrom negatives consent, and that the judgment below should be stricken and the cause remanded for proper sentence, should the Act be declared constitutional. *State v. Moore,* 245 N.C. 158, 95 S.E. 2d 548. Chapter 1017, Session Laws of 1959 (G.S. 15-180.1) provides that a defendant may appeal from a suspended sentence. It further provides 'that by giving notice of appeal the defendant does not waive his acceptance of the terms of suspension of a sentence.' The judgment below recites that the sentence was suspended by and with the consent of the defendant. There was no specific exception to this portion of the judgment; there is only an exception to the judgment generally. In the absence of anything to indicate withdrawal of consent, the recital by the court is accepted as correct and true."

The judgment in this case contains a recital that the actual sentence was suspended with defendant's assent. Nothing appears showing withdrawal of this assent. There was no specific exception to the portion of the judgment imposing the conditions of the suspended sentence.

In any event, defendant could at most have won a "pyrrhic victory" had we sustained this assignment of error since we have been unable to find prejudicial error in the trial of the case.

No error.